IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANDREW PORTER,                          :
                                        :
               Plaintiff,               :      3:15-CV-759
        v.                              :      (JUDGE MARIANI)
                                        :
SAFECO INSURANCE                        :
COMPANY OF ILLINOIS,                    :
                                        :
               Defendant.               :

## MEMORANDUM OPINION

### I. INTRODUCTION

On February 13, 2015, Plaintiff, Andrew Porter, filed a Complaint against Defendant

Safeco Insurance Company of Illinois (hereinafter "Defendant" or "Safeco"). (Compl., Doc.

2 at 3). The Complaint alleges breach of contract (Count I) and insurance bad faith (Count

II) in connection with damages sustained to Plaintiff's property due to a fire on or about

October 26, 2014. (*See generally*, Compl., Doc. 2). Plaintiff originally filed this action in the

Court of Common Pleas of Lackawanna County, but Defendant later removed to this Court

on April 17, 2015. (*See* Notice of Removal, Doc. 1).

On April 21, 2015, Defendant filed a "Partial Motion to Dismiss" under Federal Rule

of Civil Procedure 12(b)(6) (Doc. 4). Plaintiff did not file a Brief in Opposition until June 18,

2015 (Doc. 5), making his filing noncompliant with the requirements of Local Rule 7.6. This

Rule states that any party opposing a motion must "file a brief in opposition within fourteen

(14) days after service of the movant's brief." Defendant's motion was accompanied by a

Memorandum of Law in Support of Motion to Dismiss (Doc. 4, Ex. 3), filed on April 21, 2015

as an attachment to the Motion. Thus, Plaintiff had fourteen days from that date to respond

to Defendant's Motion to Dismiss under Local Rule 7.6. Plaintiff's Brief in Opposition (Doc.

5) was forty-four days overdue. Under Local Rule 7.6, "[a]ny party who fails to comply with

this rule shall be deemed not to oppose such motion." Defendant's motion is ripe for

decision. For the reasons set forth below, the Court will grant in part and deny in part

Defendant's motion.

## II. FACTUAL ALLEGATIONS

Plaintiff's Complaint makes the following allegations:

Plaintiff owns real estate located at 135 Morris Avenue, Scranton, PA. (Doc. 2 at 7,

¶ 3). Plaintiff inherited said property after his mother died. (*Id*. at ¶ 4). Upon taking

ownership of the property, Plaintiff contacted Connor-Helring Associates, Inc. ("Connor-

Helring"), an insurance agency, in order to get a quote on insuring the property. (*Id*. at ¶ 5).

Connor-Helring in a duly registered agent of Defendant Safeco and was the same company

used by Plaintiff's mother to insure the property. (*Id*. at ¶¶ 6-7). Connor-Helring gave

Plaintiff a quote that would provide annual coverage of $231,000 for Plaintiff's dwelling, plus

additional coverage; Plaintiff was surprised at the high cost because of the fact that the

coverage was nearly ten times the market value of nearby properties. (*Id*. at ¶¶ 8-9).

Defendant's agent allegedly assured Plaintiff that the amount was fair because it was a

replacement value policy for the entire dwelling. (Doc. 2 at 8, ¶ 10). Plaintiff agreed to the quote and the policy was put into effect. (*Id.* at ¶ 11).

Plaintiff renewed his insurance coverage for an annual premium of $1,070 on or about January 26, 2014. (*Id.* at ¶ 12). This included $236,000 for Plaintiff's dwelling, plus additional coverage including, but not limited to, $23,610 for other structures, $165,000 for personal property, $47,220 for additional living expense, and $300,000 for personal liability and $5,000 medical coverage." (*Id.*).

A fire broke out and severely damaged the building on or about October 26, 2014. (*Id.* at ¶ 13). The cause of the fire was ruled electrical by the Scranton Fire Department. (*Id.* at ¶ 14). Plaintiff immediately notified Defendant of the fire. (Doc. 2 at 8, ¶ 15). Freida Reese, Defendant's representative, contacted Plaintiff; she indicated for the first time to Plaintiff that his property was actually two separate properties and that his coverage was only for half of his building. (*Id.* at ¶ 16). Plaintiff objected and told Ms. Reese that he occupied the entire section of the building that he owned. (*Id.* at ¶ 17). The entire structure originally consisted of three row houses: 133, 133 ½, and 135 Morris Avenue, Scranton, PA. (*Id.* at ¶ 18). 133 Morris Avenue is owned by a third party who is not party to this action. (*Id.* at ¶ 19).

At one time, 133 ½ was set up as a separate apartment, but Plaintiff alleges that it has long since been combined with 135 Morris Avenue and used as a single residence; it has never been used or rented out as a separate residence for as long as Plaintiff and/or his

3

parents have owned the property, which is approximately 30 years. (*Id.* at ¶ 20). All of the furnishings and personal property contained in the middle portion of the building belonged to Plaintiff. (Doc. 2 at 8, ¶ 21). According to Plaintiff, the building was, mechanically, one unit which cannot be divided without totally redoing all mechanical systems, including electric, water, heat, and plumbing. (*Id.* at ¶ 22). The properties share the same electrical, heating, and plumbing systems and have a common porch and fenced-in backyard. (*Id.* at ¶ 23). Plaintiff alleges Defendant's agents have admitted that much of Plaintiff's necessary repairs cannot be effectuated without repairing both sides of the structure. (Doc. 2 at 12, ¶ 63). Defendant's agents covered both halves of the building with a tarp when dispatched to the fire scene. (*Id.* at ¶ 65).

The claim was subsequently turned over to Tauna Berry, a claims representative for the Defendant. (Doc. 2 at 9, ¶ 24). By way of letter dated December 12, 2014 and delivered to Plaintiff's Counsel on December 22, 2014, Defendant informed Plaintiff that it would not cover any damage caused to the middle section of Plaintiff's building. (*Id.* at ¶ 25). Defendant has informed Plaintiff that it will only cover one-half of Plaintiff's home. (Doc. 2 at 11, ¶ 48). According to Plaintiff, the section of Plaintiff's building that Defendant will cover has an assessed improvement value of $2,400. (*Id.* at ¶ 54). According to Plaintiff, there is no detailed description in the insurance policy of what the insurance premises consisted of; specifically, there are no descriptors such as dimensions, room counts, square footage, or any other descriptor other than Plaintiff's mailing address. (Doc.

4

2 at 9, ¶¶ 31-32). Plaintiff alleges that he has fully complied with all requirements of him under the insurance contract. (*Id.* at ¶ 34).

## III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the

elements a plaintiff must plead to state a claim. Second, the court should
identify allegations that, because they are no more than conclusions, are not
entitled to the assumption of truth. Finally, where there are well-pleaded
factual allegations, a court should assume their veracity and then determine
whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged – but it has not show[n] – that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted). This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a
> defendant moves to dismiss it, unless the district court finds that
> amendment would be inequitable or futile, the court must inform the plaintiff
> that he or she has leave to amend the complaint within a set period of time.

*Id.*

When a party does not oppose a motion to dismiss, a Court generally must

nonetheless undertake an analysis of the merits of the Complaint. *Stackhouse v.*

*Mazurkiewicz,* 951 F.2d 29 (3d Cir. 1991); *see also Husick v. Allegheny Cnty.,* 304 F. App'x

977, 979 (3d Cir. 2008) (stating that the Third Circuit has "made clear [its] disfavor of

6

dismissals under Rule 12(b)(6) for purposes of sanctioning a litigant, and . . . that a Rule 12(b)(6) motion should not be granted without an analysis of the merits of the underlying complaint notwithstanding local rules regarding the granting of unopposed motions."). However, in certain cases, a district court may rely on the local rule to treat a motion to dismiss as unopposed and subject to a dismissal without a merits analysis, in particular if the party is represented by an attorney or "if a party fails to comply with the rule after a specific direction to comply from the court." *Stackhouse,* 951 F.2d at 30.

## IV. ANALYSIS

Defendant's "Motion to Dismiss Portions of Plaintiff's Complaint pursuant to Federal Rule 12(b)(6)" requests dismissal with prejudice of Plaintiff's claim for legal fees and related expenses contained in Count I (breach of contract), Plaintiff's allegations of acts or conduct which Defendant asserts cannot be used to support Count II's statutory bad faith claim, and Plaintiff's claim in Count II for compensatory and other damages beyond the types specified in Pennsylvania's bad faith statute, as well as dismissal of Plaintiff's allegation of fraud in Count II. (*See generally,* Motion to Dismiss (Doc. 4); Defendant's Proposed Order, Doc. 4, Ex. 1). As a result of Plaintiff's failure to timely respond to Defendant's Motion to Dismiss, the Court deems Defendant's motion as unopposed. However, in accordance with Third Circuit precedent, considerations of fairness to the Plaintiff, who may not even be aware of

7

his counsel's laxity, and out of an abundance of caution, the Court will address the merits of

the Complaint with respect to Defendant's motion.[1]

## A. Count I: Breach of Contract

"To establish a breach of contract claim in Pennsylvania, one must prove: "(1) the

existence of a contract, including its essential terms, (2) a breach of a duty imposed by the

contract, and (3) resultant damages." *McShea v. City of Philadelphia*, 995 A.2d 334, 340

(Pa. 2010).

> [W]hen a written contract is clear and unequivocal, its meaning must be
> determined by its contents alone. It speaks for itself and a meaning cannot be
> given to it other than that expressed. Where the intention of the parties is
> clear, there is no need to resort to extrinsic aids or evidence. Hence, where
> language is clear and unambiguous, the focus of interpretation is upon the
> terms of the agreement as manifestly expressed, rather than as, perhaps,
> silently intended.

*Lesko v. Frankford Hosp.-Bucks Cnty.*, 15 A.3d 337, 342 (Pa. 2011) (internal citations

omitted). If the language of an insurance policy is unclear, "[i]n construing ambiguous

language in an insurance contract, we generally construe the language against the

insurance company as the drafter of the contract." *Craley v. State Farm Fire & Cas. Co.*,

895 A.2d 530, 541 (Pa. 2006).

---

[1] Although we will address the merits of the Complaint, the Court notes that pursuant to Third
Circuit precedent, this may not be necessary given that Plaintiff is represented by presumably competent
counsel. Here, Plaintiff is represented by attorney Roger Mattes, Jr., who, while failing to timely file a brief
in opposition to Defendant's motion to dismiss portions of the Complaint, ultimately did file such a brief
(Doc. 5) and has participated in discovery conferences in this matter (*see, e.g.*, Order, Doc. 13),
demonstrating his continued participation in this case.

Defendant challenges only a specific part of Plaintiff's breach of contract claim, arguing that Plaintiff's request for "legal fees and related expenses" "estimated to be in excess of $40,000" should be dismissed from Count I because there is neither a statutory basis nor a contractual basis for the award of legal fees in this matter. (Doc. 4 at ¶¶ 16-19). A review of Plaintiff's untimely Brief in Opposition to the motion (Doc. 5) reveals that both parties agree on a basic point of Pennsylvania law: that "relief in the nature of expenses, costs, and attorney fees is not available under Pennsylvania law, absent agreement of the parties or some statutory or contractual basis," citing *Lucchino v. Commonwealth*, 809 A.2d 264, 282 (Pa. 2002). (Doc. 4, Ex. 3 at 9; *see also* Doc. 5 at 8); *see also Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan*, 817 F. Supp. 2d 515, 534 (E.D. Pa. 2011) ("[I]n breach of contract matters, fees are unavailable absent an agreement between the contracting parties."). Plaintiff proceeds to argue that the contract between the parties allows for the recovery of attorney's fees. (*See* Doc. 5 at 8). Plaintiff states that "Defendant agreed to 'pay the full cost of repair or replacement' including, but not limited to 'the direct financial loss (insured) incurred,' and the full amount actually and necessarily incurred to repair or replace the damaged building.[]" (*Id.*). Plaintiff goes on to assert that "Plaintiff's attorney's fees and related expenses are a real, direct and actual expense which was necessarily incurred due to the Defendant's breach of contract." (*Id.*). As Defendant points out, (Doc. 7 at 6), the full text of the portion of the policy cited by Plaintiff is as follows:

    5. **Loss Settlement**. Covered property losses are settled as follows:

a. **Replacement Cost**. Property under Coverage A or B at ***replacement cost***, not including those items listed in 5.b.(2) and (3) below subject to the following:

(1) We will pay the full cost of repair or replacement, but not exceeding the smallest of the following amounts:

(a) the limit of liability under the policy applying to Coverage A or B;

(b) the replacement cost of that part of the damaged building for equivalent construction and use on the same premises as determined shortly following the loss;

(c) the full amount actually and necessarily incurred to repair or replace the damaged building as determined shortly following the loss;

(d) the direct financial loss you incur; or

(e) our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of the loss.

(Doc. 2, Ex. 1 at 7). The policy defines "replacement cost" as follows:

(1) In case of loss or damage to buildings, ***replacement cost*** means the cost, at the time of loss, to repair or replace the damaged property with new materials of like kind and quality, without deduction for depreciation.

(2) In case of loss to personal property, ***replacement cost*** means the cost, at the time of loss, of a new article identical to the one damaged, destroyed or stolen. When the identical article is no longer manufactured or is not available, ***replacement cost*** shall mean the cost of a new article similar to the one damaged or destroyed and which is of comparable quality and usefulness, without deduction for depreciation.

(Doc. 2, Ex. 1 at 20).

Given the disjunctive nature of Section 5(a)(1)-(5), Plaintiff's statement that "Defendant agreed to 'pay the full cost of repair or replacement' *including, but not limited to* 'the direct financial loss (insured) incurred,' *and* the full amount actually and necessarily incurred to repair or replace the damaged building,[]" (Doc. 5 at 8) (emphasis added), is directly contradicted by the text of the policy. Furthermore, 5(a)(1)-(5) concern only "replacement cost" and, given the policy's definition of this term, these provisions have no applicability to attorney's fees incurred after the time of loss. The Court cannot find a contractual basis for Plaintiff's claim for attorney fees in Count I, Breach of Contract, and will therefore strike this demand for attorney fees as to Count I accordingly. However, Plaintiff's request for attorney fees in Count II is unaffected by this ruling.

## B. Count II: Bad Faith

There are two types of bad faith claims recognized in Pennsylvania: (1) tort-based statutory bad faith claims under Pa. Cons. Stat. Ann. § 8371 and (2) common law bad faith breach of contract claims. In his Complaint, Plaintiff fails to specify which type of bad faith action he brings in Count II. But after a review of the Complaint in its entirety and the paragraphs alleged in support of Count II particularly, (Doc. 2 at 10-12, ¶¶ 46-69), the Court reads Plaintiff's submissions in Count II as allegations that support a statutory bad faith claim, as well as allegations that support a common law bad faith claim.

Defendant appears confident in its contention that "Plaintiff has only asserted statutory bad faith pursuant to 42 Pa.C.S.A. § 8371," (Doc. 7 at 8), asserting that in

11

Pennsylvania "[c]ommon law bad faith only exists in third party liability claims," (*id.*), and not in first party claims. This Court cannot agree with Defendant's reading of Plaintiff's allegations or with its statement of law. First, "the Supreme Court of Pennsylvania has held that 'where an insurer acts in bad faith, by unreasonably refusing to settle a claim, it breaches its contractual duty to act in good faith.'" *Smith v. Allstate Ins. Co.*, 904 F. Supp. 2d 515, 521 (W.D. Pa. 2012) (citing *Birth Ctr. v. St. Paul Companies, Inc.*, 787 A.2d 376, 386 (Pa. 2001)). While it is true that the Pennsylvania Supreme Court made this pronouncement while considering a third party insurance claim, this Court joins other federal courts in recognizing that the operative language of the Pennsylvania Supreme Court decision does not distinguish between first and third party insurance and in applying that decision's holding to first party insurance claims. *See id.* (collecting cases); *Zaloga v. Provident Life & Acc. Ins. Co. of Am.*, 671 F. Supp. 2d 623, 632 (M.D. Pa. 2009) ("The difference between first and third party claims does not matter to the implied covenant of good faith and fair dealing. [ ] [T]he implied covenant is brought on a contractual theory of recovery, so the relationship of the parties does not matter.").

Nonetheless, "a claim for breach of a covenant of good faith and fair dealing may not be maintained as an independent cause of action separate from the breach of contract claim." *CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co.*, 645 F. Supp. 2d 354, 369 (E.D. Pa. 2009) (citing *LSI Title Agency, Inc. v. Evaluation Servs.*, 951 A.2d 384, 391 (Pa. Super. Ct. 2008), *appeal denied*, 960 A.2d 841 (Pa. 2008)); *see also Bukofski v. USAA Cas. Ins.*

*Co.*, No. 3:08CV1779, 2009 WL 1609402, at *5 (M.D. Pa. June 9, 2009) (dismissing count asserting failure to comply with the duties of good faith and fair dealing "because plaintiff's claim of violation of the duty of good faith and fair dealing merges with her breach of contract claim"). However, "when faced with a conflict between the allegations of a count and the count's titled [*sic*], Pennsylvania courts look at the allegations and not the title." *Babiarz v. Bell Atl.-Pennsylvania, Inc.*, No. 1863 AUG.TERM 2000, 2001 WL 1808554, at *18 (Pa. Com. Pl. July 10, 2001). For these reasons, where Plaintiff asserts allegations in Count II that properly may be alleged in Count I, the Court will consider those paragraphs as having been asserted in Count I. Thus, where the allegations of Plaintiff's Complaint's clearly relate to a properly asserted claim for relief, the Court will not strike them because they were placed in another Count where they were unnecessary and instead will deem them as elements of the cause of action asserted in Count I.

With the above-mentioned and important caveat, the Court otherwise considers Count II as a statutory bad faith claim and addresses Defendant's challenges to it using the analysis proper for claims arising under § 8371. "Pennsylvania has established a statutory remedy for bad faith on the part of insurance companies." *Krisa v. Equitable Life Assur. Soc.*, 109 F. Supp. 2d 316, 319 (M.D. Pa. 2000). That statute provides, in pertinent part:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorneys' fees against the insurer.

42 Pa. Cons. Stat. Ann. § 8371.

The proper standard to determine the existence of bad faith on the part of an insurer under § 8371 was rearticulated in *Keefe v. Prudential Property and Casualty Insurance Company*, 203 F.3d 218, 225 (3d Cir. 2000) (citing *Romano v. Nationwide Mut. Fire Ins. Co.*, 646 A.2d 1228, 1232 (Pa. Super. 1994) (quoting Black's Law Dictionary 139 (6th Ed.1990))):

> [T]he term bad faith includes 'any frivolous or unfounded refusal to pay proceeds of a policy.' 'For purposes of an action against an insurer for failure to pay a claim, such conduct imparts a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self interest or ill will; mere negligence or bad judgment is not bad faith.' Therefore, in order to recover under a bad faith claim, a plaintiff must show (1) that the defendant did not have a reasonable basis for denying benefits under the policy; and (2) that the defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim.

Defendant raises three challenges to the following portions of Plaintiff's bad faith claim: (1) Plaintiff's allegations of acts or conduct which Defendant asserts cannot be used to support Count II's statutory bad faith claim: (2) Plaintiff's allegation of fraud contained in Count II; and (3) Plaintiff's claim in Count II for compensatory and other damages beyond the types specified in Pennsylvania's bad faith statute. (*See generally*, Motion to Dismiss (Doc. 4)). The Court will address each in turn.

### 1. Acts Not Covered by Bad Faith Statute

"Bad faith claims are fact-specific and depend on the conduct of the insurer vis-à-vis its insured." *Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 887 (Pa. Super. Ct. 2000). As alluded to above, Plaintiff makes two separate sets of allegations in support of his bad faith claim. In paragraphs 47-53 of the Complaint (Doc. 2), Plaintiff alleges that Defendant acted in bad faith in responding to his claim and in denying coverage for half of Plaintiff's building, allegations buoyed by the allegations in 63-67, which Plaintiff asserts serve as "an acknowledgement of responsibility by Defendant for both sides of the structure." (Doc. 2 at 12, ¶ 66). If true, these facts may support a finding that Defendant violated Pennsylvania's bad faith statute; that is, that Defendant did not have a reasonable basis for denying benefits under the policy or that Defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim.

Plaintiff's second basis for asserting a bad faith claim revolves around the allegations that "Defendant's representative insisted that Plaintiff maintain coverage for nearly one hundred times the assessed value" of the portion of Plaintiff's building for which Defendant has admitted coverage (Doc. 2 at 11, ¶¶ 54-55), and this was "an intentional, blatant, wanton and/or deliberate overcharge" that "constitutes fraud," (*id.* at ¶ 56), in addition to being "unconscionable" and "constitut[ing] bad faith," (*id.* at ¶ 60). According to Defendant, the section containing these allegations, paragraphs 54 through 62, relates to alleged "acts and conduct of defendant that both fall outside the obligations set forth in the policy and that

occurred prior to the formation of the policy." (Doc. 4 at ¶ 8). Defendant argues that "[t]he bad faith statute applies only to the handling and payment of claims, not acts that fall outside the obligations set forth in the insurance policy or for acts that predate the formation of the policy." (*See, e.g.,* Doc. 7 at 3).

The Court finds that the legal theory behind Defendant's challenge has merit, but does not warrant the broad relief that Defendant seeks. At the time that the legislature enacted § 8371, "the term ['bad faith'] captured those actions an insurer took when called upon to perform its contractual obligations of defense and indemnification or payment of a loss that failed to satisfy the duty of good faith and fair dealing implied in the parties' insurance contract." *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 199 (Pa. 2007). Recognizing this, the Pennsylvania Supreme Court held in *Toy v. Metropolitan Life Insurance Company* that the bad faith statute does not provide relief "to an insured who alleges that his insurer engaged in unfair or deceptive practices in soliciting the purchase a policy." *Id.* at 200; *see also Berg v. Nationwide Mut. Ins. Co.*, 44 A.3d 1164, 1172 (Pa. Super. Ct. 2012) ("[I]n *Toy*, our Supreme Court held that a policyholder could not assert a section 8371 claim for conduct taking place before a policy claim arose or was asserted."); *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 (3d Cir. 2014) (relying on *Toy* to affirm dismissal of Plaintiff's statutory bad faith claim where her "allegations concern[ed] the sale of policies that allegedly provided illusory coverage, and not [the insurance company's] actions in discharging its obligations under those policies.").

16

Plaintiff's bad faith claim as supported by allegations that the cost of the policy at issue was "an intentional, blatant, wanton and/or deliberate overcharge" that "constitutes fraud," (Doc. 2 at 11, ¶ 56), in addition to being "unconscionable," (*id.* at ¶ 60), is analogous to the bad faith challenge in *Toy* in that these allegations arise from conduct that occurred well before Defendant was called upon to perform its contractual obligations. "While the alleged bad faith need not be limited to the literal act of denying a claim, the essence of a bad faith claim must be the unreasonable and intentional (or reckless) denial of benefits." *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 506 (3d Cir. 2004) (internal citation omitted). Here, the essence of Plaintiff's bad faith claim – to the extent it is based on the allegations Defendant fraudulently and unconscionably overcharged him for insurance coverage on one half of his residence – does not relate to the alleged "unreasonable and intentional (or reckless) denial of benefits" on the other half of the residence that would be actionable under the statute. Thus, Defendant is correct in its argument that these particular allegations do not support a statutory bad faith claim.

The Court, however, will not strike paragraphs 54 through 62 of Plaintiff's Complaint; instead, the Court finds them relevant to Count I and will consider them as alleged there. Furthermore, even if the factual allegations in these paragraphs prove to be unnecessary or unimportant to Plaintiff's case going forward, they are not so excessive under the pleading standards of the Federal Rules as to require that they be stricken. *See Untracht v. Fikri*, 368 F. Supp. 2d 409, 415 (W.D. Pa. 2005) ("[T]he exercise of Rule 12(f) authority 'should be

reserved for a pleading which is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised.'") (quoting *Martin v. Warrington*, No. CIV.A. 01-1178, 2002 WL 341000, at \*3, (Mar. 4, 2002 E.D. Pa. 2002)).

### 2. Fraud

Defendant next argues that Plaintiff's allegation of fraud in Count II should be dismissed because Plaintiff failed to plead the elements of fraud with particularity as required by Federal Rule 9(b). (Doc. 4 at ¶¶ 11-15). A fair reading of Plaintiff's Complaint makes it clear that no separate cause of action for fraud has been alleged. Instead, Paragraph 56 is deemed properly pleaded in support of the breach of contract cause of action in Count I.

### 3. Compensatory and "Other Damages"

Here, as discussed above, the Court construes Count II as stating both a statutory bad faith claim and a common law contractual bad faith claim, and considers the allegations sounding in common law as having been pleaded in Count I. "[A]n action under § 8371 is a statutorily-created tort action," distinguishable from the common law contractual duty of good faith. *Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 884-85 (Pa. 2007). The Pennsylvania Supreme Court has made it abundantly clear that Plaintiff "may not recover compensatory damages based on § 8371," but that "that Section does not alter [Plaintiff's] common law contract rights." *Birth Ctr. v. St. Paul Companies, Inc.*, 787 A.2d 376, 386 (Pa. 2001); *see also Ash*, 932 A.2d. at 884-85 (reaffirming *Birth Center*, 787 A.2d). It is clear to the Court

that there is no basis for compensatory damages under § 8371, but it is equally clear to the

Court that, under a claim for a breach of the implied covenant of good faith and fair dealing,

compensatory damages are available. While the Court may not provide additional remedies

for violations of § 8371 when the legislature deemed those remedies unnecessary in

enacting the specific text of the statute, Plaintiff may be able to recover theses damages

under his breach of contract claim in Count I. *See Smith v. Harleysville Ins. Co.*, 418 A.2d

705, 706 (Pa. Super. 1980) *aff'd*, 431 A.2d 974 (Pa. 1981) ("An insurance statute which

imposes a penalty or the payment of counsel fees must be strictly construed. A court

should not rewrite a statute to provide penalties not deemed necessary by the legislature.")

(internal citation omitted). As this Court has previously stated,

> *Birth Center* does allow for compensatory damages, but not as a remedy
> under the bad faith statute. The [*Birth Center*] court reasoned that if an
> insurer commits bad faith, then that is a breach of the duty of good faith found
> in contracts. Thus, the bad faith is also a breach of contract. Under a breach
> of contract, compensatory damages may be awarded. "Therefore, where an
> insurer acts in bad faith, the insured is entitled to recover such damages
> sufficient to return it to the position it would have been in but for the breach."
> Although it is a fine distinction and ultimately one that does not matter,
> compensatory damages are not recoverable under the bad faith statute *per
> se*. They are available to anyone who establishes bad faith, because such
> bad faith is also a breach of the underlying contract for which the
> compensatory damages are proper. Thus, although it will have absolutely no
> practical effect on the damages awarded – or not awarded – to the plaintiffs[,]
> we will grant the motion to dismiss with regard to paragraph 86(d) of the
> amended complaint seeking compensatory and/or consequential damages
> under the bad faith statute.

*Amitia v. Nationwide Mut. Ins. Co.*, No. 3:08CV335, 2009 WL 111578, at *4 (M.D. Pa. Jan.

15, 2009) (internal citation omitted). Because Plaintiff has asserted a common law breach

of contract cause of action in Count I, he may still be entitled to the damages that Defendant wishes to strike.

## V. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendants' Motion to Dismiss (Doc. 4).  A separate Order follows.

Robert D. Mariani
United States District Judge